**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **BOBBY W. BRYANT, JR.,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| | **5:20-cv-00225-TES** |
| **NORFOLK SOUTHERN RAILROAD and** | |
| **JASON McWILLIAMS,** | |
| *Defendants.* | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTIONS TO DISMISS**

Bobby Bryant, Jr., ("Bryant") sued Jason McWilliams ("McWilliams") and

Norfolk Southern Railroad ("Norfolk Southern") under Title VII of the Civil Rights act

of 1964 and various state law causes of action. Before the Court are McWilliams's and

Norfolk Southern's Motions to Dismiss [Doc. 26] [Doc. 29] Bryant's Second Amended

Complaint [Doc. 24].

## BACKGROUND

Bryant filed his original Complaint on June 10, 2020. [Doc. 1]. McWilliams moved

to dismiss Bryant's original Complaint for three main reasons: (1) Plaintiff may not

assert a claim for sexual harassment against McWilliams under federal law and "[t]o the

extent that Plaintiff seeks relief against McWilliams in his individual capacity for

allegedly violating Title VII, his claims must be dismissed"; (2) Plaintiff could not allege

a claim for sexual harassment against Defendant McWilliams under Georgia law because no such claim exists; and (3) Plaintiff's "[d]ubious" state-law claim against McWilliams fails under *Iqbal/Twombly*. [Doc. 7, pp. 3–4]. Bryant then filed an amended Complaint on July 22, 2020. [Doc. 12]. In his amended Complaint, Bryant merely incorporated his entire original Complaint by reference and then sought to add new facts and claims against McWilliams. [*Id*.]. Upon review of the Plaintiff's amended Complaint, the Court found it to be a prohibited shotgun pleading and *sua sponte* struck it. [Doc. 23]. In the Court's order, the Court allowed Bryant to file a Second Amended Complaint and gave Bryant specific instructions to comply with Federal Rule of Civil Procedure 8(a) and 10(b) and state each claim against each defendant in a separate count. [*Id*. at p. 15].

Bryant then filed his Second Amended Complaint [Doc. 24]. In it, Bryant again complains that McWilliams, his fellow Norfolk Southern employee, sexually harassed him over the course of four days in August 2019. [*Id*. at ¶ 20]. Specifically, Bryant claims that McWilliams made overt sexual remarks to him, touched and rubbed against him, rubbed his penis against him, threatened to rape and sodomize him, tried to kiss him, and generally acted in a hostile and aggressive manner towards him. [*Id*. at ¶¶ 20, 55]. Bryant sued McWilliams for assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence per se under Georgia law. [*Id*. at ¶¶ 69–88].

2

Bryant claims that Norfolk Southern, as McWilliams's employer, is responsible for failing to intervene and prevent McWilliams from harassing Bryant as well as the resulting hostile work environment to which McWilliams subjected him. [*Id*. at ¶¶ 39, 41]. Bryant also seems to allege that Norfolk Southern improperly fired him. [*Id*. at ¶ 51].

Bryant invokes the Court's federal question jurisdiction under 28 U.S.C. § 1331 by way of Bryant's Title VII claims (federal question jurisdiction). [*Id*. at ¶12]. Bryant invokes the Court's supplemental jurisdiction under 28 U.S.C. § 1367 for his state law claims since they arise from the same case or controversy as the Title VII claims. [*Id*.].

## DISCUSSION

### A.   Motion to Dismiss Standard

When ruling on a Rule 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts use a two-step framework. *Id*. The first step is to identify the allegations that are "no more than mere conclusions." *Id*. (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id*. (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion must be dismissed if it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333; *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then

discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds* by *Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

### B. <u>Claims Against Norfolk Southern</u>

Bryant sues Norfolk Southern for gender discrimination under Title VII [Doc. 24, ¶¶ 34–44] ("Count One"), wrongful termination [*id*. at ¶¶ 45–53] ("Count Two"), and vicarious liability [*id*. at ¶¶ 89–93] ("Count Eight"). Bryant also sues Norfolk Southern for a generic claim [Doc. 24, ¶¶ 54–68] ("Count Three") titled "Defendant Norfolk Southern Railroad unlawfully subjected Plaintiff to a hostile work environment."

### 1.    Count Three Violates Rule 8(a) and 10(b)

Norfolk Southern argues that Bryant's Second Amended Complaint suffers from the same "shotgun pleading" deficiencies as his original and amended complaints. Norfolk Southern wants the Court to dismiss Bryant's entire Second Amended Complaint on this basis. The Court described Bryant's original Complaint as follows:

> Plaintiff's first and second claims are titled as follows: (1) "Race/Gender Based Discrimination in Violation of Title VII"; and (2) "Wrongful Termination in Violation of Title VII." Plaintiff does not title his third claim, but generally alleges that Defendant McWilliams is liable to him "in tort."

[Doc. 23, p. 3 (citations omitted)]. Overall, the Court finds that Bryant's Second Amended Complaint [Doc. 24] no longer suffers from all of the pleading shortfalls that doomed his original Complaint. In other words, Bryant's Second Amended Complaint is not a "shotgun pleading." Each count, for the most part, contains the facts Bryant seeks to use to support that count. Regarding McWilliams, Bryant specifies which state law claims he brings and alleges them discretely. Because Bryant's Second Amended Complaint, as a whole, is not a shotgun pleading, the Court **DENIES** Norfolk Southern's motion to dismiss the entire Second Amended Complaint.

Count Three, however, in the diplomatic words of Norfolk Southern, "continue[s] to confuse." [Doc. 29, p. 2]. In this somewhat rambling count, Bryant makes mention of potential claims for negligence, negligent hiring, negligent retention, Title VII hostile work environment, or for other torts committed by McWilliams by way of the *respondeat superior* doctrine. *See* [Doc. 24, ¶¶ 54-68]. What is clear, however, is that

Bryant failed to follow the instructions the Court gave to him in its earlier Order [Doc. 23]. Bryant never clearly identifies his specific cause of action against Norfolk Southern in Count Three. For example, while Bryant names Count Three as one for hostile work environment, the Court cannot easily decipher whether Bryant seeks to state several claims in this one count, or if he is incorporating negligence and vicarious liability principles into a hostile work environment claim. Bryant only compounds the confusion as to Count Three because Count Eight also focuses on Norfolk Southern's alleged vicarious liability for McWilliams's actions. *See* [Doc. 24, ¶¶ 89–93]. Further, Bryant also claims hostile work environment in Count One [Doc. 24, ¶ 39] and Count Three.

Count Three suffers from the same pitfalls as Bryant's Original and Amended Complaints that the Court struck down as a shotgun pleading. *See* [Doc. 23]. The Court gave Bryant specific instructions, requiring him to comply with Federal Rules of Civil Procedure 8(a) and 10(b). *See* [*id*. at p. 15 ("Plaintiff must identify each cause of action he intends to bring against Defendant Norfolk, Defendant McWilliams, or both, in separate counts of the Complaint.")]. Simply put, the Court cannot analyze Count Three without performing guesswork, making assumptions, and essentially re-crafting Bryant's complaint for him. Because that would be an inappropriate undertaking for the Court, and because Bryant failed to follow the rules governing pleadings in federal court and this Court's clear and unambiguous order, the Court agrees with Norfolk Southern that

Count Three fails to properly state a claim for which relief can be granted and it is **DISMISSED**.

### 2. Title VII

Bryant claims "Gender Discrimination in Violation of Title VII." [Doc. 24, p. 8]. Specifically, he alleges that between August 20 and August 23 of 2019, McWilliams, his coworker and fellow Norfolk Southern employee, harassed him, threatened to rape him, touched him, and made sexual comments to him while they worked on a train together. [*Id*. at ¶ 36]. Bryant also claims that Norfolk Southern knew of the harassment when it happened. [*Id*. at ¶ 35]. Further, Bryant claims that Norfolk Southern fired him as retaliation for making hostile work environment claims. [*Id*. at ¶ 39]. Bryant says that McWilliams's conduct towards him violated Norfolk Southern's policies, and Norfolk Southern thus should have taken action to prevent it. [*Id*.]. Specifically, Bryant claims that Norfolk Southern would intervene to prevent such ongoing harassment if he were a female employee, but because he is male, Norfolk Southern did not. [*Id*.]. This, argues Bryant, is sex discrimination prohibited by Title VII. [*Id*.].

Norfolk Southern argues that some of Bryant's Title VII claims should be dismissed because he failed to exhaust his administrative remedies. [Doc. 29, pp. 3–4]. Norfolk Southern attached Bryant's Charge of Discrimination filed with the EEOC as evidence of his failure to exhaust administrative remedies. [Doc. 29, p. 4 n. 2]; [Doc. 29-1, p. 2]. Norfolk Southern seems to admit that Bryant has indeed exhausted his

administrative remedies as to a sexual harassment and retaliation claim—assuming those claims were pled in conformity with the applicable pleading standard. [Doc. 29, p. 4]. But, Norfolk Southern argues that Bryant "has failed to exhaust his administrative remedies with respect to any discrete disparate treatment action or disparate impact action, thus those claims . . . should be dismissed as a matter of law." [*Id*.].

A plaintiff is required to file a charge of discrimination with the EEOC before filing a Title VII action. *See Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970)). "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Id*. (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)). A "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id*. at 1280 (quoting *Alexander v. Fulton Cnty, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)). "Courts are nonetheless 'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII].'" *Id*. (quoting *Sanchez*, 431 F.2d at 460–61). Further, "the scope of an EEOC complaint should not be strictly interpreted." *Sanchez*, 431 F.2d at 465. Thus, when considering Norfolk Southern's administrative exhaustion argument, "[t]he

proper inquiry . . . is whether [Bryant's] complaint was like or related to, or grew out of, the allegations contained in [his] EEOC charge." *Gregory*, 355 F.3d at 1280.

Norfolk Southern attached Bryant's Charge of Discrimination [Doc. 29-1] to its Motion to Dismiss. Bryant checked boxes for discrimination based on "retaliation" and "sex." [*Id*. at p. 2]. He listed August 23, 2019, as the date of the earliest discrimination that took place, and November 13, 2019, as the date of the latest discrimination. [*Id*.]. Bryant described the particulars as:

> I was hired by the above-named employer on or around January 2005, as a Conductor. In or around August 2019, I was sexually harassed by a coworker three days in a row. On or about August 23, 2019, I reported the sexual harassment and taken out of service pending the results of an investigation. On or about November 13, 2019, I was discharged.
>
> I believe that I have been discriminated against because of my sex (male), in violation of Title VII of the Civil Rights Act of 1964, as amended.

[*Id*.]. Bryant satisfied the administrative exhaustion requirement for his sexual harassment and hostile work environment claims by stating in his EEOC charge that he was sexually harassed by a coworker. [*Id*.]. Bryant satisfied the administrative exhaustion requirement for his retaliation claim by stating in his EEOC charge that he reported harassment and was subsequently fired. [*Id*.]. These claims are "like or related to, or grew out of, the allegations contained in [his] EEOC charge." *Gregory*, 355 F.3d at 1280.

Bryant does not, however, satisfy the administrative exhaustion requirement for any disparate treatment or disparate impact claim. "[A] plaintiff alleging a disparate

impact claim need only show that a neutral employment practice which is non-discriminatory on its face has a disproportionate impact on a protected class." *Sherrell Hall,* et al. *v. Dolgencorp, LLC,* No. 2:20-cv-00012-LSC, 2020 WL 7388649, at *4 (N.D. Ala. Dec. 16, 2020) (citing *EEOC v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1273 (11th Cir. 2000)). Bryant makes no mention of any policy in his EEOC charge. The Court finds that a reasonable EEOC investigation into the sexual harassment Bryant reports would not uncover unmentioned Norfolk Southern policies—much less gender disparities in their enforcement. *Gregory* at 1280. Any disparate treatment claim that Bryant might have fails for the same reason. His EEOC charge certainly puts an investigator on notice to investigate incidents of sexual harassment, hostile work environment, and retaliation, but the charge does not discuss disparate treatment of men as opposed to women. The fact that Bryant states he is a male is not enough—even under the liberal EEOC exhaustion standard—to lead a reasonable investigator to uncover disparate treatment or disparate impact. Accordingly, the Court **GRANTS** in part and **DENIES** in part Norfolk Southern's motion to dismiss Bryant's Title VII claim against Norfolk Southern.[1]

---

[1] This also means that the Court retains subject-matter jurisdiction over all of the claims discussed in this order since a federal question remains and the state-law claims relate to the same case or controversy as the federal claim. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1367.

### 3.      Wrongful Termination Claim

Bryant's labels his Count Two against Norfolk Southern as "Wrongful Termination in Violation of Employment Contract." [Doc. 24, p. 10]. To be clear, in Georgia, "wrongful termination 'is a tortious act growing out of the breach of the employment contract.'" *Fink v. Dodd*, 649 S.E.2d 359, 362 (Ga. Ct. App. 2007) (quoting *Mr. B's Oil Co. v. Register*, 351 S.E.2d 533, 534 (Ga. Ct. App. 1986)). In other words, any claim for "wrongful termination" must derive from an employment contract. *Id*. (citing *Jellico v. Effingham Cnty.*, 471 S.E.2d 36, 37 (Ga. Ct. App. 1996)).

Bryant alleges that he and Norfolk Southern had a contract that provides Norfolk Southern can only terminate his employment for just cause. [*Id*. at ¶ 49]. Bryant alleges that Norfolk Southern violated this contract by terminating him for "defend[ing] himself" from McWilliams's harassment. [*Id*. at ¶ 50]. This, argues Bryant, is not just cause.

Norfolk Southern argues that Bryant's breach of contract claim is preempted by the Railway Labor Act. [Doc. 29, p. 4]. True, Congress has established a system to resolve "disputes between an employee . . . and a carrier . . . growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C.A. § 153(i). "Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts." *Union Pacific R. Co. v. Sheehan*, 439 U.S. 89, 94 (1978) (quoting *Trainmen v. Chicago, R. & I.*

*R. Co.*, 353 U.S. 30, 40 (1957)). "Therefore, it has long been the rule that when the resolution of a state-law claim, such as the breach of contract claim here, requires an interpretation of the [collective bargaining agreement], the claim is preempted and must be submitted to arbitration before a system board of adjustment." *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1050 (11th Cir. 1996) (citing *Andrews v. Louisville & N.R.R.*, 406 U.S. 320, 324 (1972)).

Bryant alleges that he, "as a member of the local union, and (sic) had an open-ended union negotiated contract executed on his behalf with the Defendant 'Railroad.'" [Doc. 24, ¶ 48]. It is this union-negotiated contract that Bryant claims contains the "just cause" provision upon which he bases his wrongful termination claim. [*Id.* at ¶ 49]. Therefore, the Court concludes that Bryant's wrongful termination claim is precisely the type of state-law claim that involves interpretation of a collective bargaining agreement that is preempted and meant for resolution according to the process laid out in the RLA and not in the courts.[2] Accordingly, the Court **GRANTS** Norfolk Southern's motion to dismiss Bryant's wrongful termination claim.

---

[2] To be clear, the RLA does not preempt claims originating from a source other than the collective bargaining agreement. *See Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1050 (11th Cir. 1996) (citing *Hawaiin Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994)). Claims derived from Title VII or state law claims not based upon the collective bargaining agreement are not preempted.

### 4.      Norfolk Southern's vicarious liability for the acts of McWilliams

Bryant also claims that he is entitled to recover from Norfolk Southern for certain torts committed by McWilliams. Specifically, Bryant alleges that he "is entitled to recover damages against Defendant Norfolk Southern Railroad for the negligent acts and negligence per se of Defendant McWilliams." [Doc. 24, ¶ 89]. "It is well settled that an employer is liable for the negligent or intentional torts committed by its employees in the scope of employment." *Mannion & Mannion, Inc. v. Mendez*, 842 S.E.2d 334, 337 (Ga. Ct. App. 2020) (citing O.C.G.A. § 51-2-2).

While Bryant alleges several intentional torts against McWilliams, he only claims that Norfolk Southern is vicariously liable for the "negligent acts and negligence per se of Defendant McWilliams." [Doc. 24, ¶ 89]. But, Bryant's Second Amended Complaint doesn't contain a single claim for negligence against McWilliams. Further, as discussed below, Bryant does not state a valid "negligence per se" claim against McWilliams. Instead, every claim against McWilliams involves an *intentional* tort. *See* [Doc. 24, ¶¶ 20, 55 (Bryant alleging that McWilliams made overt sexual remarks to him, touched and rubbed against him, rubbed his penis against him, threatened to rape and sodomize him, tried to kiss him, and generally acted in a hostile and aggressive manner towards him.)]. Therefore, since Bryant did not allege that McWilliams committed the type of act he claims Norfolk Southern is vicariously liable for, Count Eight is **DISMISSED**.

C.    <u>Claims against McWilliams</u>

Bryant seeks to allege claims of assault [Doc. 24, ¶¶ 69-73], battery [*Id*. at ¶¶ 74-77], intentional infliction of emotional distress [*Id*. at ¶¶ 78-82], negligent infliction of emotional distress and "negligence per se" against McWilliams. [*Id*. at ¶¶ 83-88]. McWilliams moves to dismiss each of these claims.

1.    **Assault**

Bryant alleges that McWilliams committed the tort of assault by "verbally making physical threats of rape and unwanted sexual contact," and "trying to kiss [Bryant]." [Doc. 24, ¶ 70]. Specifically, Bryant states that McWilliams said he would commit forceable sodomy on Bryant on August 20 and August 23, 2019. [*Id*. at ¶ 79]. Also on August 23, 2019, McWilliams tried to kiss Bryant and threatened to rape and sodomize him. [*Id*.]. Bryant states that McWilliams's actions caused him "to have a reasonable apprehension of immediate harmful or offensive contact." [*Id*.]. Bryant also states that he was "unable to get away from [McWilliams]" because they were operating the train together. [*Id*.]. Bryant states that these actions were public, degrading, and humiliating. [*Id*. at ¶ 71]. Bryant further states that he has suffered mental anguish, lost wages, a lost job and benefits, and special damages. [*Id*. at ¶¶ 72, 73].

McWilliams argues that Bryant fails to state a claim for assault. [Doc. 26, pp. 4-5]. Specifically, McWilliams argues that Bryant fails to state a prima facie assault case because "nothing in the Second Amended Complaint supports that a person would

reasonably apprehend violent injury from McWilliams." [*Id*. at p. 4]. McWilliams also argues that "the claim of assault fails because [Bryant] does not allege to have suffered damages." [*Id*. at pp. 4-5].

"An assault occurs when all the apparent circumstances, reasonably viewed, are such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another." *Everett v. Goodloe*, 602 S.E.2d 284, 291 (2004) (quoting *Bullock v. Jeon*, 487 S.E.2d 692, 696 (1997)). Bryant alleges that McWilliams threatened to rape him, tried to kiss him, and caused Bryant to fear being "attacked, raped, or sodomized" by McWilliams. [Doc. 24, ¶¶ 33, 70]. Taking these factual allegations as true, the Court has no option but to **DENY** McWilliams's motion to dismiss Bryant's assault claim against him since, of course, a reasonable person could apprehend a violent injury in response to threats of rape and unwanted and imposing sexual advances.

### 2.    Battery

Bryant alleges that McWilliams committed the tort of battery by "physically touching [Bryant] in a threatening and sexual nature, after making threats, trying to kiss [Bryant], and leaning into [Bryant] and physically touching [Bryant] in an unwelcome, offensive, repugnant, and sexual nature, which caused [Bryant] suffer (sic) immediate harmful or offensive contact from [McWilliams]." [Doc. 24, ¶ 75]. Specifically, Bryant states that McWilliams "rubb[ed] his penis against [Bryant]" and "touch[ed] [Bryant] with his hands in a sexual manner." [*Id*. at ¶ 55]. Bryant further states that he has

suffered mental anguish, lost wages, a lost job and benefits, and special damages. [*Id*. at ¶¶ 76, 77].

McWilliams argues that Bryant's civil battery claim fails because he fails to allege that McWilliams intentionally harmed him, and that Bryant did not suffer any compensable harm. [Doc. 26, pp. 5–6]. "A cause of action for battery will lie for any unlawful touching, that is, a touching of the plaintiff's person, even if minimal, which is offensive." *Lawson v. Bloodsworth*, 722 S.E.2d 358, 359 (Ga. Ct. App. 2012) (citing *Ellison v. Burger King Corp.*, 670 S.E.2d 469, 472 (Ga. Ct. App. 2008)); *see also Rockemore v. Tobin*, No. 5:16-cv-00325-TES, 2019 WL 2203118, at *9 (M.D. Ga. May 21, 2019). "[A]n offensive touching is one which proceeds from anger, rudeness, or lust. The test is what would be offensive to an ordinary person not unduly sensitive as to his dignity." *Lawson*, 722 S.E.2d at 359–60 (quoting *Burger King Corp.*, 670 S.E.2d at 472).

Taking the above-mentioned factual allegations in Bryant's complaint as true, that McWilliams rubbed his penis against Bryant and touched him with his hands in a sexual manner, the Court easily concludes that Bryant has stated a claim for civil battery against McWilliams. Such a touching is offensive, rude, and lustful. *Lawson*, 722 S.E.2d at 359–60. Therefore, McWilliams's motion to dismiss his battery claim is **DENIED**.

### 3. Intentional infliction of emotional distress

A claim for intentional infliction of emotional distress ("IIED") requires satisfying four elements: (1) intentional or reckless conduct; (2) extreme or outrageous

conduct; (3) that the conduct caused the emotional distress; and (4) severe emotional distress. *See Amstead v. McFarland*, 650 S.E.2d 737, 742 (Ga. Ct. App. 2007) (citing *McClung Surveying v. Worl*, 541 S.E.2d 703, 707 (Ga. Ct. App. 2000)). Whether the conduct is sufficiently extreme or outrageous is a question of law for the court. *Id.* (citing *Ashman v. Marshall's of MA*, 535 S.E.2d 265, 267 (Ga. Ct. App. 2000)). "In order to rise to the requisite level of outrageousness, the defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (quoting *McClung Surveying*, 541 S.E.2d at 707).

Again, Bryant alleges that McWilliams made sexual threats to him, "rubb[ed] his penis against [Bryant]," and caused him to fear "being attacked, raped, or sodomized." [Doc. 24, ¶¶ 55, 79]. The Court finds McWilliams's actions, as alleged by Bryant and taken as true, to be intentional, extreme, and outrageous. *See Amstead*, 650 S.E.2d at 742 (noting that whether conduct is extreme or outrageous is a question of law for the court). Bryant also alleges that McWilliams caused him to fear being raped and sodomized which the Court finds could cause severe emotional distress. The Court has no trouble finding that Bryant's allegations are sufficient to describe acts "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.*

McWilliams argues that Bryant fails to allege facts that satisfy the extreme and outrageous element of his intentional infliction of emotional distress claim. [Doc. 26, p. 6]. Specifically, he argues that "any inference that McWilliams' purported statements were so extreme and outrageous is belied by Plaintiff's allegation that he returned to work each day following these purported comments, and even shared an enclosed space inside a train car with McWilliams for hours on end." [*Id*.]. And, for some unknown reason, McWilliams even argues that the actions Bryant describes as threats of forcible sodomy and rape are merely a "common vicissitude of ordinary life" and a "personality conflict with a co-employee." [*Id*. at pp. 6–7 (quoting *Jarrard v. United Parcel Service, Inc.*, 529 S.E.2d 144, 146–47 (Ga. Ct. App. 2000) and *Kornegay v. Mundy*, 379 S.E.2d 14, 16 (Ga. Ct. App. 1989))]. These arguments miss the mark on several grounds.

First, whether conduct is "outrageous" is an objective standard—not a subjective one. *See Wilcher v. Confederate Packaging, Inc.*, 651 S.E.2d 790, 792 (Ga. Ct. App. 2007). Specifically, the "rule of thumb in determining whether the conduct complained of was sufficiently extreme and outrageous is whether the recitation of the facts to an average member of the community would arouse her resentment against the defendant so that she would exclaim, 'Outrageous!'" *Id*. (quoting *United Parcel Service v. Moore*, 519 S.E.2d 15, 17 (Ga. Ct. App. 1999)). McWilliams's argument that his conduct couldn't have been extreme or outrageous since Bryant continued working with McWilliams is subjective,

and thus carries no legal weight under the controlling objective "average member of the community" standard. *Id.*

Further, McWilliams's attempts to compare his words and actions to the ordinary disputes of coworkers, like in *Jarrard* and *Kornegay*, falls well short. In *Jarrard*, the plaintiff-employee's IIED claim was based upon a "harsh performance evaluation on the day an employee returns from extended psychiatric care and continuing that interview despite the employee's tearful entreaties for a postponement." 529 S.E.2d at 146. In *Kornegay*, the plaintiff-employee's IIED claim was based upon several specific grievances, such as "commenting on Mrs. Mundy's age and hair color, interrupting her conversations or knocking objects from her desk" and "questioning and challenging her authority and ability." 379 S.E.2d at 16. Of course, the complained-of actions in those cases are not outrageous. But rubbing one's penis against a coworker and making sexual threats to them most certainly is. McWilliams's callous argument—which essentially says that a coworker rubbing his penis against another coworker and making threats to rape him amounts to no more than a personality difference or an unfortunate common workplace occurrence—doesn't warrant analysis by the Court. Needless to say, the Court easily **DENIES** McWilliams's motion to dismiss Bryant's IIED claim.

### 4.      Negligence per se

Bryant also claims that McWilliams is liable for negligence per se. [Doc. 24, ¶¶ 83–88]. First, the Court understands Bryant to claim that McWilliams violated O.C.G.A. § 51-1-14 and is thus negligent per se. [Doc. 24, ¶¶ 85–86]. To be clear, "negligence per se" is not a stand-alone tort. Instead, negligence per se is a way of showing that the "duty" and "breach" elements of negligence are satisfied. *See Goldstein, Garber & Salama, LLC v. J.B.*, 797 S.E.2d 87, 91 n. 5 (Ga. 2017) (quoting *Central Anesthesia Associates*, 333 S.E.2d 829, 831 (Ga. 1985)); *see also Reese v. CSX Transportation, Inc.*, No. cv 118-215, 2020 WL 5740253, at *29 (S.D. Ga. Sept. 24, 2020) ("Negligence per se supplies the duty and breach elements of negligence.") (citing *Central Anesthesia Associates*, 333 S.E.2d at 831). The statute Bryant cites as the basis for claiming negligence per se, O.C.G.A. § 51-1-14, is a codification of Georgia's common law assault and battery causes of action. *See, e.g., Porter v. Massarelli*, 692 S.E.2d 722, 726 n. 19, 24 (Ga. Ct. App. 2010) (describing claims and caselaw referring to assault and battery claims derived from O.C.G.A. § 51-1-13 and 51-1-14). O.C.G.A. § 51-1-14 provides that "Any violent injury or illegal attempt to commit a physical injury upon a person is a tort for which damages may be recovered." In *Darnell v. Houston County Board of Educ.*, the Georgia Court of Appeals found that even minimal touching suffices for the purposes of making a battery claim under O.C.G.A. 51-1-14. 506 S.E.2d 385, 388 (Ga. Ct. App. 1998). Bryant made separate claims for assault and battery that the Court is allowing to proceed. *See supra*, Discussion C (1)

and (2). So, to the extent that Bryant seeks to state a claim for battery under O.C.G.A. §

51-1-14, the Court has already performed that analysis and found that he has. *See supra*,

Discussion C (2). To the extent Bryant wants the Court to find that McWilliams is liable

to Bryant for negligence by way of McWilliams committing the intentional torts of

battery or assault, the Court declines to do so. To find otherwise would mean every

single common law tort that has been codified by the General Assembly actually

provides for two separate causes of action—the one it codifies and also negligence by

way of the negligence per se doctrine. Battery, assault and intentional infliction of

emotional distress are intentional torts. Negligence involves the breach of a duty of

reasonable care. The Court will not adopt Bryant's novel argument and conflate these

categories absent citation to some authority—any Georgia case—that finds negligence

per se based upon the violation of a statutory codification of a common law intentional

tort.

### 5.    Negligent infliction of emotional distress

Bryant alleges McWilliams is liable for negligent infliction of emotional distress.

[Doc. 24, ¶ 83]. "McWilliams (sic) acts or omissions in touching the Plaintiff in a

sexually provocative manner, leaning into and rubbing against him while

simultaneously threatening to rape or forceable sodomize the Plaintiff constitutes

negligence (sic) infliction of emotional distress when accompanying (sic) by the

touching, under Georgia law." [Doc. 24, ¶ 87].

In *Lee v. State Farm Mut. Ins. Co.*, the Supreme Court of Georgia held that "In a claim concerning *negligent* conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." 533 S.E.2d 82, 84 (Ga. 2000) (emphasis added). Many Georgia cases recite the elements of negligent infliction of emotional distress as: (1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress. *See, e.g., Reid v. Waste Industries USA, Inc.*, 812 S.E.2d 582, 590 (Ga. Ct. App. 2018) (citing *Coon v. The Medical Center, Inc.*, 797 S.E.2d 828 (Ga. 2017)). However, while it may seem obvious since the name of the tort is *negligent* infliction of emotional distress, it is necessary to clarify that the above-mentioned elements, which omit any negligence requirement, only apply to negligent acts. *See Coon*, 797 S.E.2d at 836 ("[T]he following three elements are necessary to recover damages for emotional distress *caused by negligence* . . . ."). Said another way, the proper claim for a plaintiff seeking to recover for emotional distress caused by intentional acts is IIED. *See Amstead*, 650 S.E.2d at 742. Bryant does not properly allege that McWilliams is liable for negligence. He instead alleges that McWilliams committed several intentional acts that caused him emotional distress. Any chance that Bryant might have at recovering emotional distress damages is by way of an IIED claim—a claim the Court is allowing to proceed. *See supra*, Discussion C (3).

Accordingly, the Court **GRANTS** McWilliams's motion to dismiss Bryant's negligent infliction of emotional distress claim.

## CONCLUSION

The Court **GRANTS** McWilliams and Norfolk Southern's Motions to Dismiss [Doc. 26]; [Doc. 29] as to the following claims which are hereby **DISMISSED**:

- Count One (in part): as to Bryant's disparate impact and disparate treatment claims against Norfolk Southern

- Count Two: Bryant's wrongful termination claim against Norfolk Southern

- Count Three: violates Rules 8(a) and 10(b), and the Court's Order [Doc. 23]

- Count Seven: Bryant's "negligence per se" and negligent infliction of emotional distress claims against McWilliams

- Count Eight: Bryant's vicarious liability claim against Norfolk Southern

The Court **DENIES** McWilliams and Norfolk Southern's Motions to Dismiss [Doc. 26]; [Doc. 29] as to the following claims which are permitted to proceed:

- Count One (in part): Bryant's Title VII sexual harassment, hostile work environment, and retaliation claims against Norfolk Southern

- Count Four: Bryant's assault claim against McWilliams

- Count Five: Bryant's battery claim against McWilliams

- Count Six: Bryant's intentional infliction of emotional distress claim

  against McWilliams

**SO ORDERED**, this 22nd day of December, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**