**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

|  |  |
|---|---|
| **BOBBY W. BRYANT, JR.,** | |
| *Plaintiff,* | **CIVIL ACTION NO.** |
| **v.** | **5:20-cv-00225-TES** |
| **NORFOLK SOUTHERN RAILROAD[1] and JASON McWILLIAMS,** | |
| *Defendants.* | |

**ORDER GRANTING DEFENDANT NORFOLK SOUTHERN'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Bobby W. Bryant ("Plaintiff") brings this sexual harassment and civil rights lawsuit under Title VII of the Civil Rights Acts of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, against Defendant Norfolk Southern Railway Company ("Defendant Norfolk Southern"). Based on the same facts underpinning his federal claims, Plaintiff also brings various state law claims against his former co-worker, Jason McWilliams ("Defendant McWilliams"). Defendant Norfolk Southern has moved for summary judgment against all claims asserted against it. For the reasons discussed in detail below, the Court **GRANTS** Defendant Norfolk Southern's Motion for Summary Judgment [Doc. 52] and dismisses all federal claims in this action. And, since the federal

---

[1] The docket incorrectly refers to this defendant as "Norfolk Southern Railroad." The record reflects that the proper legal entity is "Norfolk Southern Railway Company." [Doc. 52, p. 1, n.1].

claims are dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against Defendant McWilliams.

## BACKGROUND

### A.    Preliminary Matters

The Court construes the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *Johnson v. Governor of Fla.*, 405 F.3d 1214, 1217 (11th Cir. 2005). Notwithstanding this favorable construction, Local Rule 56 requires the nonmoving party or "the respondent to a motion for summary judgment [to] attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine dispute to be tried." LR 56, MDGa. A respondent's failure to file a statement in this manner will result in the Court deeming as admitted "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record[.]" *Id.*

Plaintiff, as the respondent, failed to follow the local rules and file a response that specifically refuted any of the 67 numbered facts contained in Defendant Norfolk Southern's Statement of Material Facts. As a result of Plaintiff's noncompliance, the Court will enforce its local rules and deem Defendant Norfolk Southern's Statement of Material facts admitted pursuant to Local Rule 56. However, Plaintiff's failure to effectively respond in accordance with the local rules does not relieve the Court of its

duty to determine whether a genuine issue of material fact remains for trial. *United States. v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citing *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam)) ("[T]he district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact."). Derived from Defendant Norfolk Southern's Statement of Material Facts, here are the facts of this case.

### B.    Factual Background

#### 1.    Employment with Defendant Norfolk Southern

Plaintiff first began his employment with Defendant Norfolk Southern in January or February 2005 as a conductor trainee for the railroad. [Doc. 52-2, ¶ 2]; [Doc. 56, Bryant Depo., p. 11:13–17]. As a conductor, Plaintiff led the operation of the locomotives, performed manual labor related to the operation, and completed paperwork associated with transport. [Doc. 52-2, ¶ 3]. He worked as a conductor for six years before being assigned the position of engineer in January 2011. [*Id.* at ¶ 8]. The responsibilities of an engineer differ from those of a conductor. An engineer generally runs the train and performs those tasks assigned to him by the conductor. [*Id.* at ¶ 4]. However, even though he was assigned as an engineer, Plaintiff also had the opportunity to return to his role as a conductor twice a year for six-month stretches of

time. [*Id.* at ¶ 7]. Regardless of his position at the time, Plaintiff exclusively worked out of the Bronson Yard in Macon, Georgia. [*Id.* at ¶ 12]. He also belonged to the SMART Union and was subject to the provisions of its collective bargaining agreement. [*Id.* at ¶ 5]. This meant that Plaintiff was subject to its disciplinary process. [*Id.* at ¶ 6].

During his employment with Defendant Norfolk Southern, Plaintiff attended mandatory diversity classes that covered topics such as discrimination. [*Id.* at ¶ 10]. He also was familiar with Defendant Norfolk Southern's Equal Employment Opportunity (the "EEO") policy, as well as its policy for reporting EEO violations. [*Id.* at ¶¶ 9–11].

2.    Events Giving Rise to Plaintiff's Claims

Between August 20, 2019, and August 23, 2019, Plaintiff worked as a conductor on a locomotive with Defendant McWilliams as the engineer. [*Id.* at ¶ 19]. Plaintiff and Defendant McWilliams knew each other prior to this assignment. [*Id.* at ¶ 15]. Defendant McWilliams has been an employee of Defendant Norfolk Southern since October 2004, and he and Plaintiff both worked as conductors out of the Bronson Yard in 2005. [*Id.* at ¶¶ 13, 15]. They regularly met up outside of work, usually to grab a drink or two at a bar or play a game of pool. [Doc. 56, Bryant Depo., pp. 49:18—50:9]; [Doc. 55, McWilliams Depo., pp. 35:5—36:11]. These social outings definitively ended when Defendant McWilliams moved to Lynchburg, Virginia, for work in or around 2008. [Doc. 55, McWilliams Depo., p. 16:1–15]. The two did not remain in contact. [Doc. 52-2, ¶ 16]. Around October 2018, Defendant McWilliams returned to work for Defendant

4

Norfolk Southern as an engineer out of its Bronson Yard location. [Doc. 55, McWilliams Depo., p. 23:1–12]; [Doc. 52-2, ¶ 18].

August 20, 2019 was the first time that either party could remember working with the other since their time together in 2005. [Doc. 55, McWilliams Depo., pp. 34:10—35:4]; [Doc. 56, Bryant Depo., pp. 48:14–22; 51:2–8]. On this date, the two men went to work their respective jobs as conductor and engineer, and they discussed how their lives had changed since they last saw each other. [Doc. 56, Bryant Depo., p. 51:11–20]. For example, Defendant McWilliams spoke of his girlfriend and showed Plaintiff pictures of her.[2] [*Id.* at p. 57:18–21]; [Doc. 55, McWilliams Depo., p. 49:2–10]. The workday ended around 6 p.m., without any notable incidents between the two men. [Doc. 56, Bryant Depo., pp. 51:21–25; 58:14–17]; [Doc. 55, McWilliams Depo., pp. 49:24—50:7].

The next day, August 21, 2019, Plaintiff met with his immediate supervisor, James Brown ("Brown"), and several IT associates from Atlanta to discuss new devices and programs for the railroad. [Doc. 52-2, ¶ 21]. After this meeting, Brown and the IT associates accompanied Plaintiff to the engine terminal where they watched him perform a brake test for the locomotive. [Doc. 56, Bryant Depo., p. 52:13–23]. Plaintiff

---

[2] The parties dispute the nature of these photos, i.e., whether they were sexually explicit. *Compare* [Doc. 56, Bryant Depo. 57:18–21 (McWilliams showed him pictures of his "girlfriend, ex-girlfriend's breasts and butt and stuff like that[]")] *with* [Doc. 55, McWilliams Depo. 49:5–10 (McWilliams showed Plaintiff "a picture of [his] girlfriend[]")].

noted that he had "been cutting up with them" before returning to his regular work for the day—working on the locomotive with Defendant McWilliams. [*Id.* at p. 52:20–23]. Upon his return, Defendant McWilliams made a "smart" comment to him about his conversation with Brown and the IT associates. [*Id.* at pp. 52:24—53:2]. Plaintiff laughed the comment off and simply took his seat on the conductor side of the locomotive. [*Id.* at p. 53:2–4]. Then, Plaintiff alleges that Defendant McWilliams pushed up against him and said, "when Mr. Brown leaves, I'm going to rape you." [Doc. 52-2, ¶ 22]. Plaintiff pushed Defendant McWilliams off him and told him to "get out of [his] face with all that." [Doc. 56, Bryant Depo., p. 53:10–15]. In his deposition, Plaintiff testified that he was not scared that Defendant McWilliams was actually going to rape him at the time because he would not have allowed that to happen. [Doc. 56, Bryant Depo., p. 69:17–19]. He described Defendant McWilliams' comments and actions as "childish." [Doc. 52-2, ¶ 27].

Once Defendant McWilliams stepped away from Plaintiff, the two resumed work-related activities. [Doc. 56, Bryant Depo., p. 53:19–23]. For conversation, Plaintiff commented on the attractiveness of the female IT associates from Atlanta that he had just met. [Doc. 52-2, ¶ 28]. The two men joked about their different "standards" in women, until Defendant McWilliams became agitated with the conversation and suggested that they speak to the terminal superintendent, Ray Wallace. [*Id.* at ¶ 29]; [Doc. 56, Bryant Depo., pp. 72: 12–19; 81:14–17]. The locomotive stopped at Wallace's

office, but Plaintiff did not want to address the issue with him at that time. [Doc. 56, Bryant Depo., p. 82:1–11]. Both men agreed not to speak to the other about personal matters for the remainder of their time on the job. [Doc. 52-2, ¶ 29]. When Plaintiff left work at the end of the day, he called a friend to tell him that Defendant McWilliams said he was going to rape him. [Doc. 56, Bryant Depo., pp. 84:10—85:1].

The next workday passed without incident.[3] [Doc. 52-2, ¶ 30]. At the end of the day, Plaintiff and Defendant McWilliams exited the locomotive and began to discuss work assignments. [Doc. 56, Bryant Depo., p. 55:1–7]. Both men were aware that another engineer would replace Defendant McWilliams on the schedule for the following week. [Doc. 52-2, ¶¶ 37–38]. This discussion turned into a verbal altercation, and Plaintiff told Defendant McWilliams, "Hey, man, how about you shut up." [Doc. 56, Bryant Depo., p. 55:9–10]. In response, Defendant McWilliams said, "How about I put my dick in your mouth." [*Id.* at p. 55:9–10]. While Plaintiff admits that he was not scared that Defendant McWilliams would actually commit this act, he did tell Defendant McWilliams that he planned to file a grievance against him for the comment. [Doc. 52-2, ¶¶ 32–33].

Plaintiff contacted his co-worker David Neubauer (who he knew to be friendly with Defendant McWilliams) to complain about Defendant McWilliams' behavior and

---

[3] Plaintiff does, however, allege that Defendant McWilliams purposefully operated the locomotive in a manner that resulted in him being "throw[n] back and forth" within the compartment. [Doc. 56, Bryant Depo., pp. 54:6—10; 58:18—59:8].

comments. [*Id.* at ¶ 35]. He asked Neubauer to tell Defendant McWilliams "to chill out" because he had "heard enough and this [was] the final straw." [Doc. 56, Bryant Depo., pp. 86:18–21; 55:25—56:1]. In turn, Neubauer called Defendant McWilliams that night to discuss Plaintiff's concerns. [Doc. 52-2, ¶ 36]. Defendant Williams told Neubauer that he believed Plaintiff to be a "weak man" for discussing their issues with another employee. [Doc. 55, McWilliams Depo., p. 57:3–9].

On Friday, August 23, 2019, Defendant McWilliams walked into the crew room before his shift to talk with Plaintiff about his conversation with Neubauer. [*Id.* at pp. 55:17—56:6]. He started the conversation by telling Plaintiff that he had "talked to [his] daddy last night." [*Id.*]. Upon hearing this, Plaintiff called Brown, who was responsible for managing issues between crew members regarding misconduct. [Doc. 59, Brown Decl., ¶ 3]. Plaintiff informed Brown that "[he] had a[n] EEO situation with . . . [Defendant] McWilliams," and he could not work with him anymore. [Doc. 56, Bryant Depo., p. 102:8–12]; [Doc. 52-2, ¶ 40].

At the time of the call, Brown was in Valdosta, Georgia, so he contacted his immediate supervisor, David Carter, to inform him of Plaintiff's allegations. [Doc. 54, Brown Depo., p. 53:7–14]. Carter instructed Brown to drive to Macon and investigate the matter and remove both men from service. [*Id.* at p. 53:13–17]. Brown contacted Todd Parker (a supervisor stationed in Macon) with instructions to start the investigation while Brown made his way to Macon. [Doc. 52-2, ¶ 42]. During Parker's

investigation, he asked Plaintiff and Defendant McWilliams to prepare statements about their time together while on assignment together. [*Id.* at ¶ 43]. Defendant McWilliams wrote two statements. In the first statement, he denied the allegations that he threatened to rape Plaintiff. [Doc. 55, McWilliams Depo., p. 63:7–15]. In the second statement, Defendant McWilliams detailed his shifts with Plaintiff and mentioned that the two had been speeding on the train and Plaintiff threatened him because of it. [Doc. 55, McWilliams Depo., pp. 53:6–25; 61:21—62:4]. In Plaintiff's statement, he wrote that Defendant McWilliams had been "acting very childish and making several inappropriate comments." [Doc. 56-1, p. 32]. [Doc. 52-2, ¶¶ 42–45]. Plaintiff also admitted to pushing Defendant McWilliams while on the locomotive. [Doc. 54, Brown Depo., p. 54:3–12]; [Doc. 52-2, ¶ 32].

When Brown arrived, he spoke with each man individually and reviewed their statements. [Doc. 52-2, ¶ 46]. He removed both men from service pending Norfolk Southern's investigation. [Doc. 56, Bryant Depo., p. 67:17–25]; [Doc. 55, McWilliams Depo., p. 30:20–25]; [Doc. 59, Brown Depo., p. 56:6–12]; [Doc. 59, Brown Decl., ¶ 11]; [Doc. 52-2, ¶ 51]. Brown contacted the EEO department and spoke with Danielle Stephenson, who advised Brown to gather additional statements from witnesses about the underlying allegations. [Doc. 52-2, ¶¶ 47–48]. As instructed, Brown submitted several witness statements to Ms. Stephenson for her review. [Doc. 52-2, ¶ 58]. Two days later, Ms. Stephenson contacted Brown to inform him that based upon her

investigation, she found the harassment allegations to be "unsubstantiated."[4] [Doc. 59, Brown Decl., ¶ 14]. She suggested that "both employees, at a minimum, be counseled on their unprofessional behavior." [*Id.*].

In addition, Brown contacted the Labor Relations department, who assists in the disciplinary process when SMART Union members are accused of misconduct. [Doc. 59, Brown Decl., ¶ 10]; [Doc. 52-2, ¶ 50]. The allegations contained in each statement were considered major policy violations under the SMART Union's collective bargaining agreement. [Doc. 52-2, ¶¶ 51–52]. Under this agreement, employees accused of major policy violations are typically removed from service pending a formal disciplinary investigation into the matter. [*Id.* at ¶ 54]. A formal disciplinary investigation includes a hearing conducted by a neutral hearing officer. [*Id.*]. During these hearings, a charging officer presents the charges and testimony concerning the facts alleged by the charged employees and other witness. [*Id.*]. The hearing officer makes the disciplinary determination based on the factual information submitted during the hearing. [*Id.* at ¶

---

[4] Plaintiff moved to strike paragraphs 14 and 15 from Brown's declaration because he alleges them to be hearsay and therefore, inadmissible. [Doc. 62, ¶¶ 2–3]. It is true that generally, inadmissible hearsay cannot be considered on a motion for summary judgment. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012). However, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Jones*, 683 F.3d at 1293–94. Here, giving Plaintiff the fullest benefit possible by assuming that the statements in question really are hearsay, the evidence that Plaintiff complains of could easily be admitted at trial by having the relevant witness testify as to what she said and/or by introducing the documents as business records. Accordingly, the Court **DENIES** Plaintiff's Motion to Strike [Doc. 62].

55]. In the event the charged employee is not satisfied with the decision, there are appeal options under the collective bargaining agreement. [*Id.* at ¶ 56].

Brown, as the charging official, drafted a charge letter for Plaintiff and Defendant McWilliams, wherein he stated that they had engaged in unprofessional, inappropriate, and offensive behavior toward each other between August 20, 2019, and August 23, 2019. [*Id.* at ¶ 57]. An investigative hearing for both men was held October 29, 2019, based on Brown's charge letter. [Doc. 52-2, ¶ 61]; [Doc. 56-1, pp. 49–143]. At the hearing, both Defendant McWilliams and Plaintiff had the opportunity to put up exhibits, testimony, and witnesses in support of their version of events. [Doc. 52-2, ¶ 62]. Defendant McWilliams denied Plaintiff's sexual harassment allegations, commentating that it seemed that Plaintiff wanted to "imply that [Defendant McWilliams] was gay," which was offensive to him. [Doc. 56-1, p. 143].[5]

At its conclusion, the hearing officer, Travis Bailey, determined that both Defendant McWilliams and Plaintiff engaged in unprofessional and inappropriate offensive behavior while on duty, which violated Defendant Norfolk Southern's employment policies. [Doc. 52-2, ¶ 62]. As a result of this determination, Norfolk Southern fired both employees on November 13, 2019. [*Id.* at ¶ 63]. Plaintiff stated that he believed he was ultimately removed from service because Defendant McWilliams made a "kamikaze statement" wherein he admitted to speeding on the locomotive. [*Id.*

---

[5] In his deposition, Defendant McWilliams "testified that he was not a homosexual." [Doc. 52-2, ¶ 34].

at ¶ 64]. Plaintiff appealed the hearing officer's decision, and in December 2020, he was reinstated for service and regained his seniority. [*Id.* at ¶ 66]. Prior to winning his appeal, Plaintiff filed an EEOC Charge claiming sexual harassment and retaliation. [*Id.* at ¶ 67]. Soon thereafter, he filed this lawsuit against Defendant Norfolk Southern and Defendant McWilliams.

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the initial responsibility of informing the court of the basis for its motion." *Four Parcels*, 941 F.2d at 1437. The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)); Fed. R. Civ. P. 56(c)(1)(A).[6] "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Josendis*, 662 F.3d at 1315 (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Further, where a party fails to address another party's assertion of fact as required by

---

[6] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255. Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for trial. Rather, on summary judgment, the district court must accept as fact all allegations the [nonmoving] party makes, provided they are sufficiently supported by evidence of record. So[,] when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted). Stated differently, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "The evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. And "if a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment"; it "must hold a trial to get to the bottom of the matter." *Sconiers*, 946 F.3d at 1263.

**DISCUSSION**

**A.**     **Federal Law Claims Against Defendant Norfolk Southern**

    **1.**     **Hostile Work Environment/Sexual Harassment**

Title VII provides that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). "[A]n [employee] may establish a violation of Title VII by proving that discrimination based on sex created a hostile or abusive work environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986); *see also Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1300 (11th Cir. 2007) (noting that an employee can establish sex-based discrimination by showing he was subject to a "hostile work environment caused by sexual harassment that is sufficiently severe or pervasive to alter the terms and conditions of work[]").

Here, Plaintiff claims that as a result of Defendant McWilliams' inappropriate comments and behavior over a three-day period (August 21–23), he was subjected to a sexually hostile work environment in violation of Title VII. He alleges that Defendant Norfolk Southern is vicariously liable "for the acts and omissions of Defendant McWilliams committed while acting in the course and scope of his employment . . . ." [Doc. 24, ¶ 1]. Plaintiff contends that the following allegations of sexual harassment support his hostile work environment claim: (1) on August 21, 2019, Defendant McWilliams pressed his body against Plaintiff and said, "I'm going to rape you"; and

(2) on August 22, 2019, Defendant McWilliams said to Plaintiff, "How about I put my dick in your mouth."[7]

For Plaintiff to prevail on a hostile work environment claim, he must show that: (1) he belongs to a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment was based on his sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) there is a basis for holding the employer liable. *Husley v. Pride Restaurants, LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004) (citation omitted). Defendant Norfolk Southern argues that Plaintiff cannot show the third, fourth, or fifth prongs of an actionable hostile work environment claim. Careful to construe the evidence in the light most favorable to Plaintiff, the Court considers prongs three, four, and five in turn.

### a.    *Prong Three: Based on Sex*

"To be viable under Title VII, challenged harassment must be "based on" or "because of" sex. *Gray v. Koch Foods*, No. 2:17-cv-595-RAH, 2022 WL 141533, at *7 (M.D. Ala. Jan. 14, 2022) (citing *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004)). This standard requires Plaintiff to prove that "the conduct at issue was not

---

[7] Plaintiff also alleges that on August 22, 2019, Defendant McWilliams texted Neubauer a photo of a man wearing a skirt, captioned, "For that 'little bitch' at every workplace[,]" apparently referring to Plaintiff. [Doc. 63, p. 2]. However, this allegation was not contained in Defendant Norfolk Southern's Statement of Material Facts. Moreover, the record is less than clear if Defendant McWilliams sent this picture directly to Plaintiff or if he sent it to a co-worker.

merely tinged with offensive sexual connotations, but actually constituted *discrimination* because of sex." *Oncale v. Sundown Offshore Servs, Inc.*, 523 U.S. 75, 81 (1998). For that very reason, "general vulgarity or references to sex that are indiscriminate in nature will not, standing alone, generally be actionable." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010). It is important to remember that "Title VII is not a 'general civility code' and does not make actionable ordinary workplace tribulations." *Alhallaq v. Radha Soami Trading, LLC*, 484 F. App'x 293, 295 (11th Cir. 2012) (quoting *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006)). Ordinary workplace tribulations include the occasional "vulgar banter, tinged with sexual innuendo, of coarse and boorish workers." *Pospicil v. Buying Office, Inc.*, 71 F. Supp. 2d 1346, 1356 (N.D. Ga. 1999) (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)).

In addition to these considerations, the Court is mindful of the fact that this is a same-sex harassment lawsuit. In these types of lawsuits, the Supreme Court has identified three ways in which a plaintiff can show that the harassment was because of his sex. *See Oncale*, 523 U.S. at 80–81. A plaintiff may present evidence that (1) the harasser was homosexual; (2) the harasser has a gender-hostility towards that particular sex in the workplace; or (3) the harasser treated one sex in a mixed sex-workplace differently that the other sex. *Stancombe v. New Process Steel LP*, 652 F. App'x 729, 733 (11th Cir. 2016) (per curiam) (citing *Onacle*, 523 U.S. at 80–81).

17

Upon review of the record and applicable law, it appears that Plaintiff has not produced sufficient evidence to show that Defendant McWilliams' harassment occurred *because of* Plaintiff's sex. First, there is nothing in the record to plausibly suggest that Defendant McWilliams was homosexual. In fact, when directly asked about his sexuality, Defendant McWilliams emphasized that he was not homosexual and was married to a woman.[8] *See Parker v. Consolidated Pipe & Supply Co.*, No. 5:18-CV-1960-CLS, 2020 WL 1285842, at *5 n.26 (N.D. Ala. Mar. 18, 2020) (noting that the defendant's testimony that he was not gay and had been married to a woman for years was evidence against a finding that the defendant was homosexual). When Plaintiff was asked about Defendant McWilliams' sexuality, he stated that he had no opinion and could not speak on whether he was homosexual. [Doc. 56, Bryant Depo., p. 115:20–24]. Plaintiff did, however, testify at his deposition that he heard talk that Defendant McWilliams "was going around pretending like he was a homosexual" by "changing his voice" and "making remarks that . . . [a] homosexual would say[]," but salacious workplace rumors don't qualify as credible evidence. [*Id.* at pp. 141:17—142:5]; *see Stancombe*, 652 F. App'x at 733 (finding that workplace rumors to the effect that a co-worker is gay did not qualify as "credible evidence"). Accordingly, Plaintiff has offered

---

[8] Defendant McWilliams also testified that he had been previously married to a woman. [Doc. 55, McWilliams Depo., p. 8:5–15].

no credible evidence to suggest that Defendant McWilliams is a homosexual or, to the Court's next point, that Plaintiff sought sex from him.

While Plaintiff alleges that Defendant McWilliams threatened to rape him, he specifically stated that he did not fear that a sexual assault of this nature would occur. *Cf. Oncale*, 523 U.S. at 77–78 (noting a potential claim for same-sex harassment where the harasser threatened plaintiff with rape, and the plaintiff believed that the harasser would act on such threats). Instead, Plaintiff believed that Defendant McWilliams made this rape comment to antagonize him. *See* [Doc. 56, Bryant Depo., p. 62:1–4 ("[T]he next day I just couldn't take it anymore. [Defendant McWilliams] likes to antagonize, and I wasn't going to be antagonized.")]. Plaintiff also repeatedly stated that he did not know if *any* of the harassment was motivated by a sexual desire. *See* [Doc. 56, Beyant Depo., pp. 69:8—70:1]. "The fact that the conduct was sexual in nature is not sufficient on its own to show that it was motivated by sexual desire[.]" *Stancombe*, 652 F. App'x at 733 (quoting *Reeves*, 594 F.3d at 809). For example, there is no evidence to suggest that Defendant McWilliams told Plaintiff he was going to "put [his] dick in [his] mouth" because he held some sort of sexual interest in Plaintiff.

Rather, the evidence more clearly shows that Defendant McWilliams and Plaintiff were in a spat at the time he made the comment. Plaintiff had just told Defendant McWilliams that he had "begged [another co-worker] to [bid on a job the following week] so [that he] didn't have to work with [him] anymore." [Doc. 56, Bryant

Depo., p. 55:1–12]. At that point, the exchange between the two men became heated. In his deposition, Plaintiff testified that he told Defendant McWilliams, "Hey, man, how about you shut up." [*Id.* at p. 55:9–10]. And Defendant McWilliams responded, "How about I put my dick in your mouth." [*Id.* at p. 55:10–11]. Given this context, Defendant McWilliams made the comment to insult and antagonize Plaintiff in response to their argument; not to express a sexual interest and/or desire toward him. *See, e.g., Lee v. City of Atlanta*, No. 1:07-CV-1145-CC-CCH, 2009 WL 10664913, at *8 (N.D. Ga. Jan 13, 2009), *report and recommendation adopted in part, rejected in part by*, 2009 WL 10664973 (N.D Ga. Mar. 11, 2009).

As to the other considerations, the Court concludes that the record lacks any credible evidence that Defendant McWilliams expressed general hostility toward men in the workplace. *Stancombe*, 652 F. App'x at 733. At most, the evidence Plaintiff proffered suggests that Defendant McWilliams is an antagonist and generally acts childishly. There is also nothing in the record to suggest that Defendant McWilliams talked to and interacted with female co-workers differently than male co-workers in the workplace (assuming Defendant McWilliams routinely interacted with female co-workers, given that men made up 90% of the Norfolk Southern's workforce).

Therefore, the Court cannot conclude that Plaintiff has shown that the challenged harassment was "based on" or "because of" his sex. *Husley, LLC,* 367 F.3d at 1244. But,

even if the Court is wrong as to the second prong of a hostile work environment claim,

Plaintiff's claim fails on the remaining prongs.

> **b.** **Prong Four: Severe or Pervasive**

To establish a hostile work environment claim based on sexual harassment, the

plaintiff must show that "the workplace is permeated with discriminatory intimidation,

ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment." *Miller v. Kenworth of*

*Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510

U.S. 17, 21 (1993)). Whether the alleged harassment is severe or harassment requires

consideration of objective and subjective components. *Miller*, 277 F.3d at 1276. "Thus, to

be actionable, [the alleged harassment] must result in both an environment that a

reasonable person would find hostile or abusive and an environment that the victim

subjectively perceives . . . to be abusive." *Buford v. Life Storage, LP*, No. 20-10505, 2021

WL 3720044, at *5 (11th Cir. Aug. 23, 2021) (quoting *Miller*, 277 F.3d at 1276). "The

severe or pervasive standard is intended to be 'sufficiently demanding to ensure that

Title VII does not become a general civility code.'" *Moreland-Richardson v. City of*

*Snellville*, No. 19-14228, 2021 WL 4452523, at *9 (11th Cir. Sept. 29, 2021) (quoting

*Tonkyro v. Sec'y, Dep't of Veterans Affairs*, 995 F.3d 828, 837 (11th Cir. 2021)).

Defendant Norfolk Southern contends that Plaintiff has failed to show that his

harassment was subjectively or objectively severe. As to the subjective component,

Defendant Norfolk Southern asks the Court to consider Plaintiff's responses and/or reactions to the alleged comments and conduct. Defendant Norfolk Southern argues that if Plaintiff had truly perceived the harassment to be severe, he would have reported the conduct to Brown (who was present during one of the alleged incidents) or filed a formal complaint with the company immediately after experiencing the harassing behavior. Instead, Plaintiff continued working with his harasser. In addition, Defendant Norfolk Southern notes that Plaintiff's description of the harassment is particularly telling. Plaintiff admits that he was not fearful that Defendant McWilliams would (1) actually rape him or (2) forcibly place his penis in his mouth. *See* [Doc. 56, Bryant Depo., pp. 69:8—70:9]. Rather, at the time these incidents occurred, Plaintiff regarded Defendant McWilliams' comments as evidence of his "childish" nature—not serious threats of harassment.

Perhaps if this was the only evidence in the record, Defendant Norfolk Southern would be correct in its arguments. *See EEOC v. Burlington Med. Supplies*, 536 F. Supp. 2d 647, 655 (E.D. Va. 2008) (quoting I Barbara T. Lindemann & Paul Grossman, *Employment Discrimination Law* 1345 (4th ed. 2007)) ("Conduct that a particular plaintiff subjectively regards as unwelcome, but trivial, is not actionable by that plaintiff[.]"). However, this is not the case. "Sexual harassment is subjectively severe [or] pervasive if the complaining employee perceived it to be at the time." *Hulsey*, 367 F.3d at 1248. In his deposition, Plaintiff testified that Defendant McWilliams' conduct made him

uncomfortable to the point where he did not want to be near him. Plaintiff stated that he could not maintain "[one] hundred percent focus on the job" as a result of Defendant McWilliams' harassment, which could have caused a "safety hazard." [Doc. 56, Bryant Depo., p. 155:11–18]. Plaintiff stated that he was so uncomfortable working with Defendant McWilliams that he reached out to—"begged"—another employee to see if he could replace Defendant McWilliams from his schedule the following week. [*Id.* at p. 55:1–12]. He testified that he suffers from nightmares about his termination and experiences flashbacks to the time when Defendant McWilliams said he was "going to rape [him]." [*Id.* at p. 179:5–17]. Viewing this evidence in the light most favorable to Plaintiff, the Court assumes, without deciding, that Plaintiff showed a subjective belief that the harassment was severe or pervasive enough to support a sex-based hostile work environment claim. But there's more to it—Plaintiff also must show that the conduct is *objectively* severe or pervasive. *Miller*, 277 F.3d at 1276.

"In evaluating the objective severity of the harassment, [courts] look to the totality of the circumstances, including: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the employee's job performance." *Allen*, 121 F.3d at 647; *see also Tonkyro*, 995 F.3d at 837. "This [evaluation] requires careful consideration of the social context in which

particular behavior occurs and is experienced by its target." *Wilborn v. S. Union State Cmty. Coll.*, 720 F. Supp. 2d 1274, 1296 (M.D. Ala. 2010) (quoting *Oncale*, 523 U.S. at 81).

The Court has considered the relevant evidence and concluded that at least three of the four factors are clearly absent from Defendant McWilliam's conduct. Particularly relevant to this conclusion is the Court's consideration of the social context in which the harassment occurred. Overall, Plaintiff complains about three main incidents: (1) Defendant McWilliams pressing his body against Plaintiff and saying, "I'm going to rape you"; (2) Defendant McWilliams saying to Plaintiff, "How about I put my dick in your mouth[]"; and (3) Defendant McWilliams texting Neubauer a photo of a man in a skirt with the word "bitch" written underneath it, apparently in reference to Plaintiff.[9]

While Plaintiff points to one incident of brief, unwanted touching and two incidents of sexually-charged language, such incidents—when viewed in the aggregate —do not amount to "severe" harassment based on the relevant case law. Numerous courts in this circuit have found behavior significantly more egregious than the conduct shown here not to be severe enough to support a hostile work environment claim. *See Baldemar v. Jefferson S. Corp.*, No. 4:15-CV-00209-HLM-WEJ, 2016 WL 9331114, at *6–9 (N.D. Ga. Dec. 5, 2016) (finding alleged harassment not severe where the defendant solicited plaintiff to have sex with him on two occasions, simulated having sex with her from behind, hugged her tightly to his body, made references to the size of his penis,

---

[9] *See* n.7, *supra*.

and commented on plaintiff's physical appearance and private area); *Latrece Lockett v. Choice Hotels Int'l, Inc.*, 315 F. App'x 862, 866–68 (11th Cir. 2009) (affirming district court's finding that alleged harassment was not severe where the defendant briefly touched plaintiff's bottom and talked to her about sexually-charged topics, such as sexual positions, performing oral sex on her, and her boyfriend's inability to satisfy her sexually); *Benson v. Solvay Specialty Polymers USA, LLC*, No. 1:16-cv-04638-CAP-RGV, 2018 WL 5118615, at *14–15 (N.D. Ga. July 3, 2018), *report and recommendation adopted by*, 2018 WL 5118601 (N.D. Ga. Sept. 7, 2018) (finding alleged harassment not severe where the defendants touched the plaintiff on her buttocks and breasts, showed her one of their erect penises, referenced oral sex, and made other "boorish and offensive comments," such as how they wanted to "F [her] three times," and "cum down [her] throat"); *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 804–05 (11th Cir. 2012) (finding alleged harassment not to be severe where defendants grabbed the plaintiff's buttocks two to five times, repeatedly hugged her, and repeatedly expressed interest in having sex with her).

Relatedly, in this action, the record does not reflect a finding that the harassment was physically threatening or humiliating. On cursory review, one would think a threat of rape would automatically be considered physically threatening. However, the Court cannot ignore the facts underlying this alleged threat; it must consider "the conduct in context, not as isolated acts[.]" *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir.

1999) (citing *Allen*, 121 F.3d at 647). In his deposition, Plaintiff clearly testified that he did not believe or fear that Defendant McWilliams would sexually assault him, and the facts underlying the incident support his deposition testimony. When Defendant McWilliams pushed up against Plaintiff and told him that he was "going to rape [him]," Plaintiff pushed Defendant McWilliams away from him. Within minutes of this incident, the two men began a casual conversation. Plaintiff even shared remarks about the attractiveness of two female IT associates at the job site that he had met earlier that day. The casual conversation only ended when Defendant McWilliams—not Plaintiff— became upset at a comment that Plaintiff made about his standards in women. Defendant McWilliams then told Plaintiff they needed to talk with Wallace, but Plaintiff did not want to speak with him at that time. And the two resumed their respective professional duties.

Plaintiff regarded Defendant McWilliams as an "antagonist" and described his comments and behaviors as "childish"—not physically threatening or humiliating. While Plaintiff said that he was uncomfortable by Defendant McWilliams' behavior, his feelings of discomfort are not sufficient to show that he regarded it as physically threatening or humiliating. *See Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1150 (N.D. Ga. 1997) ("[D]iscomfort is not sufficient to meet the test of a physically threatening or humiliating act or environment.").

As to the final element, Plaintiff has failed to show that any of the alleged harassment unreasonably affected his ability to perform the duties of his job. Plaintiff and Defendant McWilliams were scheduled to work together as conductor and engineer (respectively) on a locomotive from Tuesday, August 20, 2019, to Friday, August 23, 2019. He worked with Defendant McWilliams up until the last day of this scheduled shift, where at that point in time he reported the harassment. Pursuant to company policy, both men were pulled from service. However, for the three shifts that the men worked together, there is nothing in the record to indicate that Plaintiff did not fully perform the duties of his job. While Plaintiff states that the harassment affected his job, he does not offer any evidence to support his bare allegation. At most, he complains that he "didn't have [one] hundred percent focus on the job . . . which could have been a safety hazard." [Doc. 56, Bryant Depo., p. 155:16–18]. But, it proved not to be a safety hazard. It ended up not affecting his work. Here, the Court cannot accept that Plaintiff's failure to have "[one] hundred percent focus on the job"—with nothing more—is evidence that the alleged harassment so affected Plaintiff that it altered the terms and conditions of his employment. *Allen*, 121 F.3d at 646 ("A mere scintilla of evidence . . . will not suffice.").

Under the aforementioned factors for testing whether harassment is sufficiently severe or pervasive enough to constitute a hostile work environment, the conduct alleged here simply does not meet the legal standard. No reasonable jury could

conclude that Plaintiff has shown a workplace so permeated with "discriminatory intimidation . . . to alter the conditions of the victim's employment and create an abusive working environment." *Miller*, 277 F.3d at 1275.

Again, even if the Court missed the analysis on this element, Plaintiff failed to show a basis on which to hold Defendant Norfolk Southern liable.

### c.    *Prong Five: Employer liability*

Defendant Norfolk Southern argues that Plaintiff has failed to establish the fifth and final prong of a hostile work environment claim—employer liability.[10] The basis of an employer's liability for a hostile work environment "depend[s] on the status of the harasser"—i.e., whether the alleged harasser is a supervisor or merely a co-worker. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013); *see also Beckford v. Dep't of Corr.*, 605 F.3d 951, 961 (11th Cir. 2010) ("One standard exists for harassment by supervisors and another for harassment by [co-workers] and third parties."). In this action, the Court focuses on the applicable standard for a co-worker's harassment.

"Employer liability in a case involving sexual harassment by a co-worker exists when the employer knew (actual notice) or should have known (constructive notice) of the harassment and failed to take remedial action." *Breda v. Wolf Camera & Video*, 222

---

[10] In his Response [Doc. 63] to Defendant Norfolk Southern's summary-judgment motion, Plaintiff failed to address any arguments related to employer liability. Although this failure permits the Court to deem any arguments related to this element as abandoned, the Court nonetheless favors issuing a ruling on the merits. *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

F.3d 886, 889 (11th Cir. 2000) (citing *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir. 1982)). "Actual notice is established by proof that management knew of the harassment." *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003). Whereas constructive notice "is established when the harassment was so severe and pervasive that management reasonably should have known of it." *Id.* Either way, a plaintiff alleging employer liability, must show that his employer "was negligent in controlling working conditions." *Vance*, 570 U.S. at 424. Plaintiff has failed to make such a showing here.

In his deposition, Plaintiff admitted that he first notified someone in a managerial position—his supervisor, Brown—about the harassment on August 23, 2019.[11] Plaintiff informed Brown that he had an "EEO situation" because Defendant McWilliams "sexually harass[ed] and antagoniz[ed] him" on the job. [Doc. 59, Brown Decl., ¶ 9]. In response to hearing these allegations, Brown, who was in Valdosta at the time, immediately drove to Macon to personally investigate the matter. However, even before Brown left Valdosta, he contacted Parker—a supervisor stationed in Macon. Brown instructed Parker "to start gathering facts [from both men] to see what was going on [with them]." [*Id.*]. From all accounts, following this phone conversation, Parker pulled both men aside to launch an investigation into the allegations. He

---

[11] Brown visited the Bronson Yard in Macon on Wednesday, August 21, 2019. [Doc. 59, Brown Decl., ¶ 8]. He directly interacted with Plaintiff, and he received no complaints from him about his working environment with Defendant McWilliams. [*Id.*].

conducted interviews and had each man produce a written statement. The record also shows that once Brown arrived, he promptly took over the investigation and suspended both men from service pending investigation. These actions were all taken on the same day that Plaintiff first reported his allegations of harassment. The Court cannot see what else Defendant Norfolk Southern could have done in this situation. The record clearly shows that its managerial staff took immediate action once Plaintiff reported what he considered sexual harassment. Once Norfolk Southern learned of possible sexual harassment, it took immediate and effective steps to end it. That is exactly what the law requires. Therefore, the Court finds that Plaintiff has failed to offer any evidence to support his required showing of a basis of employer liability.

To recap, the Court concludes that Plaintiff has failed to present sufficient evidence to show the third, fourth, or fifth prongs of a hostile work environment claim based on sexual harassment. Defendant Norfolk Southern is entitled to summary judgment on Plaintiff's claim of a hostile work environment.

### 2. Retaliation

Title VII prohibits employers retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII.]" 42 U.S.C. § 2000e-3(a). A plaintiff can establish a violation of the anti-retaliation provision of Title VII by direct or circumstantial evidence. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). Here, Plaintiff claims that Defendant Norfolk Southern retaliated

against him by removing him from service and ultimately terminating his employment after he complained to his supervisor about Defendant McWilliams' sexual harassment. However, he presents no direct evidence in support of this claim, pushing proof of his retaliation to the circumstantial-evidence route. Therefore, the Court refers to the *McDonnell Douglas* burden-shifting framework.[12] *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020). To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, Plaintiff must show that (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected activity. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "These three elements create a presumption that the adverse action was the product of an intent to retaliate." *Bryant v. Jones*, 575 F.3d 1281,

---

[12] "[E]stablishing the elements of the *McDonnel Douglas* framework is not, and never was intended to be, the sine qua non for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff may still survive summary judgment so long as "he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* at 1328; *see also Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012). This is referred to as a "convincing mosaic of circumstantial evidence." *Smith*, 644 F.3d at 1328. A plaintiff can show intentional discrimination under this framework by presenting evidence of "among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discrimination intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Silverman v. Bd. of Educ. of City of Chicago*, 637, F.3d 729, 734 (7th Cir. 2011)). However, Plaintiff made no attempt to formulate any argument that the evidence in this case may be conducive of a convincing mosaic. Since it is not the Court's responsibility "to cull through the record in search of evidence" to support an argument, it considers Plaintiff's retaliation claim solely under the *McDonnell-Douglas* framework. *Freeman v. City of Riverdale*, 2007 WL 1129004, at *6 (N.D. Ga. Apr. 16, 2007) (citations omitted).

1308 (11th Cir. 2009). To rebut this presumption, Defendant Norfolk Southern must

articulate a legitimate, non-discriminatory reason for the adverse action. *Id.* If

Defendant Norfolk Southern can articulate such a reason, Plaintiff must then produce

sufficient evidence for a reasonable factfinder to conclude that the proffered reason is

pretextual. *Id.*

Here, Defendant Norfolk Southern argues that Plaintiff failed to satisfy the first

and third elements of a prima facie retaliation claim. In response to these arguments,

Plaintiff only responds by arguing why his internal complaint of harassment to Brown

constitutes a statutorily protected activity. However, even in this response, Plaintiff

merely asserts that his action is statutorily protected in the most conclusory of

fashions—without any evidentiary support. Notably, Plaintiff does not address

Defendant Norfolk Southern's argument regarding his perceived failure to draw a

causal connection between the alleged protected activity and his suspension and

ultimate termination. Nor does he attempt to rebut Defendant Norfolk Southern's

proposed legitimate and non-retaliatory reason for its decision to suspend and

terminate him.

### a.     *Protected Activity*

Plaintiff alleges that he engaged in a statutorily protected activity when he

formally complained about Defendant McWilliams' sexual harassment to Brown and

Parker. "To be sure, reporting . . . a sexually hostile work environment constitutes

protected activity"—regardless of how informal that reporting may be. *Wheatfall v. Bd. of Regents of Univ. Sys. of Ga.*, 9 F. Supp. 3d 1342, 1353 (N.D. Ga. 2014); *Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989); *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1141 (11th Cir. 2020) (en banc). That being said, Plaintiff's informal complaint is not a protected activity unless he can show that he held a "good faith, reasonable belief that the employer was engaged in unlawful employment practices under [Title VII]." *Weeks v. Harden, Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). This means that Plaintiff must have subjectively believed Defendant Norfolk Southern engaged in unlawful discrimination and this belief was also "*objectively* reasonable in light of the facts and record presented." *Id.* at 1312; *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). "The reasonableness of the employee's belief is measured against existing substantive law." *Van Portfliet v. H & R Block Mortg. Corp.*, 290 F. App'x 301, 303 (11th Cir. 2008).

The Court finds its analysis of the subjective, good faith component to be duplicative of its analysis on the subjective component of the severe or pervasive prong discussed above. For those same reasons, the Court assumes, without deciding, that Plaintiff subjectively believed that Defendant Norfolk Southern engaged in unlawful employment practices.

Relatedly, the Court adopts its analysis on the objective component of the severe or pervasive prong as well to conclude that Plaintiff cannot show that his belief that

Defendant McWilliams' harassment was actionable under Title VII was objectively reasonable. The Court has already extensively outlined caselaw showing that the harassment did not occur because of Plaintiff's sex and that it was not severe or pervasive enough that a reasonable person would find it hostile or abusive. Thus, because Plaintiff has not established an objectively reasonable belief that Defendant McWilliams' conduct constituted sexual harassment under the law of this circuit, he cannot show that his reporting of Defendant McWilliams' conduct constituted statutorily protected expression protected by Title VII. *See Tatt v. Atlanta Gas Light Co.*, 138 F. App'x 145, 148 (11th Cir. 2005). However, even if Court assumes that Plaintiff could show that he engaged in a statutorily protected activity, he failed to show a causal connection between his reporting of the alleged harassment and his suspension and ultimate termination.

### b.      *Causal Connection*

Plaintiff's analysis lacks any substantive argument showing a causal connection between his alleged statutorily protected activity and his suspension and ultimate termination. In fact, his only tangential argument in favor of causal connection is temporal proximity. *See* [Doc. 63, p. 12]. However, even giving Plaintiff the benefit of the doubt that he actually makes this argument, he simply asserts its existence without support from applicable case law. [*Id.* ("Question of fact regarding Defendant Railroad retaliatory practices . . . and the close proximately [*sic*] (same day) of Plaintiff's

34

reporting an EEOC claim to being removed from work and escorted from the workplace.")].[13] As to this point, "while close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient." *Gogel*, 967 F.3d at 1190 n.15. And, one must consider the fact of an intervening act of misconduct between the time Plaintiff reported his "EEO situation" and being suspended for his own unprofessional and inappropriate behavior. *See Henderson v. FedEx Express*, 442 F. App'x 502, 507 (11th Cir. 2011) ("Intervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action."). In this action, after Plaintiff reported the sexual harassment, Brown and Parker conducted an investigation into the matter and learned that Plaintiff had allegedly engaged in a series of unprofessional behaviors at the workplace. Only after learning of these behaviors did Brown remove both Plaintiff and Defendant McWilliams (which was consistent with the terms of collective bargaining agreement and/or Defendant Norfolk Southern's policy) pending further investigation. Therefore, the Court is not persuaded by Plaintiff's bare assertion that the temporal proximity in this case so clearly establishes a causal connection between the alleged protected activity and suspension.

---

[13] By citing this portion of Plaintiff's Response, the Court is in no way agreeing that Plaintiff's assertion that a fact exists simply because Plaintiff posed it as a question. In fact, what Plaintiff describes as a question of fact is actually a legal question present in every retaliation case.

To summarize, Plaintiff has the burden of putting forth a prima facie case of retaliation. He has failed to do so as he did not carry his burden to show that he engaged in protected activity and that there was a causal connection between his reporting of the harassment and his ultimate suspension and firing. Even if the Court overlooked these deficiencies and, giving Plaintiff the benefit of every doubt, assumed that he had successfully made out a prima facie case, Defendant Norfolk Southern has met its burden to articulate a legitimate, non-retaliatory business reason for its actions: it relied on its investigation determining that Plaintiff had violated its workplace rules, and that is why it suspended and ultimately fired him.

Thus, the burden shifted back to Plaintiff to show that Norfolk Southern's proffered reasons were mere pretext to cover up its true motive: retaliation. Repeatedly, the Eleventh Circuit has emphasized that if the proffered nonretaliatory reason "is one that might motivate a reasonable employer, [the] employee must meet that reason *head on* and rebut it . . . ." *Gogel*, 967 F.3d at 1136 (emphasis added). "Thus, to establish pretext, at the summary judgment stage," Plaintiff had to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Norfolk Southern's "proffered legitimate reason[] for its actions that a reasonable factfinder could find [it] unworthy of credence." *Id.* (citation omitted). And, "[a] reason is not pretext for retaliation unless it is shown *both* that the reason was false and that

36

retaliation was the real reason." *Id.* (quoting *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007)).

Here, Plaintiff offers absolutely nothing to show that Norfolk Southern's proffered reasons were pretextual. In fact, his sole and only argument in response to Norfolk Southern's arguments against his retaliation claim focused solely on the protected activity prong. He never addressed the pretext aspect of a retaliation claim at all. Thus, since Plaintiff offered nothing to rebut Norfolk Southern's reasons for his suspension and firing, he absolutely failed to meet its reasons head on to demonstrate they are unworthy of credence. *Gogel*, 967 F.3d at 1136.

Without this critical evidence, Plaintiff cannot "establish the necessary causation" and show that his "protected activity was a but-for cause of the alleged adverse action by" Defendant Norfolk Southern. *Id.* at 1135. Accordingly, Norfolk Southern is also entitled to summary judgment on Plaintiff's retaliation claim.

### B.    Remaining State Law Claims Against Defendant McWilliams

The Court has now dismissed all federal claims in this action so that what's left is Plaintiff's remaining state law claims against Defendant McWilliams. Federal courts may exercise supplemental jurisdiction over state law claims "in any civil action of which the district courts have original jurisdiction." 28 U.S.C. § 1367(a). "District courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

"[S]tate courts, not federal courts, should be the final arbiters of state law," and when a federal court "has dismissed all federal claims from a case, there is a very strong argument for dismissal, especially where the federal claims are dismissed prior to trial." *Ingram v. Sch. Bd. of Miami-Dade Cnty.*, 167 F. App'x 107, 108 (11th Cir. 2006) (quoting *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997)). "[D]istrict courts may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

The Court exercises its considerable discretion under 28 U.S.C. § 1367(c)(3) and declines to exercise supplementary jurisdiction over Plaintiff's remaining state law claims. Consequently, all of the state law claims made against Defendant McWilliams are **DISMISSED without prejudice**. Should Plaintiff wish to pursue these claims, he may do so in the appropriate forum in a Georgia court.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion to Strike [Doc. 62], **GRANTS** Defendant Norfolk Southern's Motion for Summary Judgment [Doc. 52] and **DISMISSES** all remaining state law claims against Defendant McWilliams **without prejudice**. The Court **TERMINATES** Plaintiff's Motion for Sanctions [Doc. 44] and Motion to Enforce Settlement Agreement [Doc. 48] **as moot**.

Finally, the Court **DIRECTS** the Clerk of Court to **ENTER** Judgment accordingly and **CLOSE** this case.

**SO ORDERED**, this 27th day of January, 2022.

S/Tilman E. Self, III

**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**